ARCHIBALD C. STARK AND WIFE, Plaintiffs in Error, *v.* JAMES C. HILLIBERT, Defendant in Error.

### ERROR TO CLARK.

Where parties in a proceeding in chancery go to trial, treating the cause as at issue, where a replication had not been filed, the Supreme Court will consider the cause as if the issue were complete.

Where a bill sets up a bond and mortgage, making a *prima facie* case, and the answer sets up payment, this will not be considered as responsive to the bill; but being of an affirmative character, the answer must be sustained by proof.

THE bill in this case shows that Hillibert held a note on A. C. Stark, dated January 1, 1838, for $1,316.12, due first January, 1840, with twelve per cent. interest after due, for which defendants gave the mortgage as security on 800 acres of lands in Clark county, of the same date as note.

The bill prays for judgment and execution to sell the lands in the mortgage to pay the same.

The answer admits the debt, note and mortgage set out in the bill, but alleges payment in full of the note and mortgage in the year 1842. Answer shows how it was paid. That in 1840 Hillibert had sold Stark another tract of land, 320 acres, with an old mill on it, in Clark county, for $1,300, and four boat patterns, all valued at $1,500, payable in four equal annual payments. Stark took possession of mill property without title and improved the mill tract and mill property to a large increased value, to wit: $4,100. Stark and Hillibert then, in 1842, differed and quarreled about their business, and Stark gave up to Hillibert the possession of the mill property thus improved by him and Stark, and increased in value from $1,500 to $4,100, and Hillibert then sold it to one Jacob Shetler, thus improved, and Hillibert and Stark canceled their contract of the sale of it to Stark in January, 1842.

The answer further shows that after Hillibert got back the mill property thus improved, Shetler, as agent for Hillibert, agreed with Stark to arbitrate the differences and settle the value of the mill land and mill property thus improved by Stark, and they by writing, submitted it to five men, mutually chosen, who awarded to Stark the value of the mill land and mill property as improved by Stark, $4,100, on the third day of January, 1842, and which amount Hillibert was to secure to Stark.

That Hillibert received the mill property back, thus improved by Stark, from the value of $1,500 to $4,100, and sold it on the same day to Shetler.

Answer further shows the payments of the amount of the

award and how to be paid, viz.:    The $4,100 as follows, viz.:
$1,500 to be deducted for the first price of the mill lands, etc.;
$410 to be deducted for goods, etc., bought of Hillibert; $300
to be deducted for note sold him on Keys & Duckwal; $14 to
be deducted for pasture of stock field, making $2,254, which
left a balance due to Stark at settlement, on 24th January,
1842, just three weeks after the arbitration, of $1,846.

There is a general replication to first answer.

There was an amended answer by leave of the court, setting
up usurious contracts in note and mortgage.

The amended answer shows that Stark applied to Hillibert
for a loan of money, viz.: $1,000, and Hillibert said his terms
of loaning were to take so much property and goods, and Stark
only got of Hillibert $180 in money, and the balance for the
note was $870, which Stark got in horses and oxen and goods
at enormously high prices, making in all $1,050, and the shift
and device used, etc.

Shows the corrupt intention and fraudulent means used to
evade the statute of usury.

Both answers are sworn to, oaths not being waived.

The cross-bill is withdrawn, and answer as amended as above,
let stand.

There was a decree by HARLAN, Judge, for complainant, and
ordering sale, by the master in chancery.

S. B. GOOKINS and J. P. COOPER, for Plaintiffs in Error.

C. H. CONSTABLE, for Defendant in Error.

SKINNER, J.    This was a bill in equity by Hillibert against
Stark and Wife to foreclose a mortgage, executed by them to
complainant to secure the payment of a bond for money, made
in 1838.    The respondents answered, admitting the original in-
debtedness and mortgage, and set up payment through an award
between the parties, made in 1842; and also, by an amended
answer, set up usury in the original consideration of the bond.
A replication was filed to the original answer, but none was filed
to the amended answer.

The parties having gone to trial upon the evidence taken, and
treated the cause as at issue, the respondents will be deemed to
have waived the necessity of replication, and the cause will be
treated in this court as the parties themselves have done upon
the trial below,—as though completely at issue.    *Webb* v. *The
Alton M. and F. Insurance Company*, 5 Gil. R. 223; *Jameson*
v. *Conway*, ibid. 227.    There is no proof of usury in the re-
cord, and the only remaining matter for inquiry is, whether the

23

evidence establishes the defense of payment.  This is for the respondents, independent of their answer, to prove.   The bond and mortgage making a *prima facie* case, the defense of payment set up in the answer is not to be taken as responsive to the allegations of the bill, but like any other defense of an affirmative character, admitting the original obligation in the bill alleged, must be proved by the party bringing it forward, in evidence of that obligation.   Story's Eq. Jur., sec. 1529.

The evidence clearly shows that the arbitration and award relied upon in the answer, were not between the parties to this suit, but were between the respondent, Stark, and one Shetler, and concerning the value of certain other lands and improvements thereon made by the erection of a mill by Stark; and which property Hillibert before then had contracted to convey to Stark upon paying the consideration therefor, and which Stark was then negotiating the sale of his interest in to Shetler. The award, therefore, can have no effect upon the mortgage debt,—arising out of another transaction and subject matter than that to which the arbitration related.   It is evident, or at least probable, from the whole case, that Stark, in his negotiation with Shetler for sale of the mill property, was endeavoring to save to himself the value of the improvements he had put thereon, and transfer his liability to Hillibert on his purchase of the property, to Shetler.   The final result was, that the contract of sale of the mill property by Hillibert to Stark was rescinded, and Hillibert executed his contract for conveyance of the same, upon payment of a consideration expressed, to Shetler; and it is proved that Stark got a portion of what Shetler paid for the property.   Indeed, it is the most natural and probable conclusion, from the whole case, that the re-sale of the mill property by Hillibert to Shetler was by arrangement between the three, Shetler, Hillibert and Stark, for the purpose of enabling Stark to get out of the property the value of his improvements, and to secure and provide for payment to Hillibert, through Shetler, the new purchaser, of the original unpaid consideration for the land.

There is, however, some evidence of admissions of Hillibert, tending to prove payment of the mortgage debt.   The conversation in 1845 between Hillibert and the witness Blackburn, evidently had reference to the mill property transaction, and not to the mortgage debt.   The witness understood, he says, the arbitration was concerning the mortgage, and says the mill property and the arbitration were talked of, yet he knew nothing about the mortgage, nor did he know what was said about the mortgage, if anything.

The settlement made in 1842, to which Kidwell testifies, also

related to the mill property, and nothing was said, nor did the witness know anything about the mortgage debt.

The answer alleging payment through the operation of the award, the respondents must prove such payment substantially as stated. It is clear that the award was not binding on Hillibert and that it had nothing to do with the mortgage debt. And loose conversations of Hillibert in reference to other transactions made when the mortgage debt was not in question, and where there can be no moral certainty they had reference to this debt, are insufficient to avoid the *prima facie* legal liability arising from the bond and mortgage.

*Decree affirmed.*